

**ORDERED in the Southern District of Florida on August 31, 2016.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| In re | CASE NO.   14-11370-RAM |
|  | CHAPTER   7 |
| DONALD JEROME KIPNIS, |  |
|      Debtor. |  |
|  |  |
| BARRY E. MUKAMAL, as |  |
| Chapter 7 Trustee, |  |
|      Plaintiff, |  |
| vs. | ADV. NO. 16-01044-RAM |
| CITIBANK N.A. *et al*, |  |
|      Defendants. |  |

```
                                    )
BARRY E. MUKAMAL, as                )
Chapter 7 Trustee,                  )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )        ADV. NO. 16-01045-RAM
                                    )
DONALD JEROME KIPNIS, and           )
ANALIA KIPNIS,                      )
                                    )
          Defendants.               )
_____)
```

## ORDER DENYING MOTIONS TO DISMISS

Trustees typically use 11 U.S.C. §544(b) to "step into the shoes" of unsecured creditors in order to apply state statutes of limitations in avoidance actions. While this has been the general use, the language in §544(b) is broad, and some trustees have brought avoidance actions that would have been time-barred under state law by relying on the Internal Revenue Service ("IRS") as the triggering creditor. Under federal law, the IRS may pursue collection of taxes for ten years from the assessment date and its collection remedies include the right to avoid transfers under state law without being bound by state statutes of limitations.

The chapter 7 trustee in this case is seeking to do just that, to step into the shoes of the IRS as an unsecured creditor in order to avoid transfers that occurred in 2005. Unless the trustee can pursue all avoidance remedies available to the IRS,

2

avoidance of the transfers would be time-barred under applicable Florida law. The Court, for the reasons more fully explained below, finds that the language of §544(b) is clear and allows trustees to step into the shoes of the IRS and to pursue avoidance actions that the IRS, outside of bankruptcy, could have timely pursued on the petition date.

## Factual and Procedural History

Prior to the filing of the bankruptcy case, the Debtor was in the construction business and, together with his partner Lawrence Kibler, owned Miller & Solomon General Contractors, Inc. ("M&S"). Both complaints in the above-styled adversary proceedings allege that in December of 2000, the Debtor and Mr. Kibler, in order to "increase the bonding capacity of M&S," entered into a custom adjustable rate debt structure (the "CARDS Transaction"). The Debtor then claimed the losses generated from the CARDS transaction in his 2000 and 2001 personal income tax returns.

In June 13, 2003, the IRS notified the Debtor that his 2000 and 2001 taxes were under investigation, which ultimately resulted in a March 22, 2005 examination report that determined the Debtor's deficiency for tax year 2000 to be $701,113 and his deficiency for tax year 2001 to be $346,495. The Debtors filed an appeal of the examination report in the United States Tax

3

Court. On November 1, 2012, the Tax Court ruled in favor of the IRS, disallowing the losses claimed by the Debtor, and affirming the tax deficiencies in the examination report.

The Debtor filed a chapter 11 bankruptcy petition on January 21, 2014 (the "Petition Date") and converted his case to chapter 7 on February 6, 2014. Barry Mukamal was appointed chapter 7 trustee (the "Trustee"). The IRS has filed a proof of claim totaling $1,911,787.23 [Claim 1-2 in the Main Case]. The claim asserts that $1,886,158.02 is secured and $25,629.51 is unsecured. The claim also asserts that $25,253.45 is a priority claim under 11 U.S.C. §507(a)(8).

On January 15, 2016 the Trustee filed two adversary complaints. Both complaints allege, in general, that after the 2005 examination report the Debtor "engaged in various asset conversion strategies" in order to evade creditors. The complaint in Adv. No. 16-1044 seeks to set aside the Debtor's transfer, in August 5, 2005, of a bank account titled solely in his name, to himself and Defendant Analia Kipnis as tenants by the entireties (the "Bank Account Transfer"). The complaint in Adv. No. 16-1045 seeks to avoid the "attempted"[1] transfer of real property located at 2333 Brickell Avenue, Terrace C, in Miami,

---

[1] The Court uses the word "attempted" because the Trustee alleges in the complaint in Adversary Case No. 16-01045 that the Debtor currently has an interest in the apartment.

4

Florida (the "Property") by the Debtor to Defendant Analia Kipnis (the "Condominium Transfer"). The attempted transfer of the Property was implemented by execution of a quit-claim deed dated August 5, 2015, and pursuant to a Premarital Settlement Agreement entered into by the parties earlier on July 5, 2005.

On June 17, 2016 Defendant Analia Kipnis filed motions to dismiss in both adversary proceedings [DE #18 in Adv. No. 16-01045 and DE #36 in Adv. No. 16-01044] (the "Motions to Dismiss").[2] The Defendant argues that both complaints are barred by applicable statutes of limitation and that §544(b) does not give the Trustee the right to apply the ten-year IRS collection period. The Trustee filed a response to the Motions to Dismiss [DE #22 in Adv. No. 16-01045 and DE #41 in Adversary No. 16-01044]. The Trustee argues that because the IRS is an unsecured creditor in this case, he can step into its shoes under §544(b) and not be bound by state statutes of limitation. The Defendant filed a reply in support of her Motions to Dismiss [DE #26 in Adv. No. 16-01045 and DE #46 in Adv. No. 16-01044]. The Court held a hearing on the Motions to Dismiss on August 2, 2016. Although the pending motions are in separate adversary

---

[2] The motion to dismiss in Adv. No. 16-01045 seeks dismissal of all counts except for count VII, which alleges unjust enrichment. The complaint in Adv. No. 16-01044 includes counts against several other defendants and that motion to dismiss only seeks dismissal of count XXV, the only count against Defendant Analia Kipnis.

proceedings, the relevant background facts and the legal issues in both Motions to Dismiss are the same.

The Court has reviewed the complaints and considered the legal arguments and the applicable law as presented in the Motions to Dismiss, the response, the reply, and at the August 2nd hearing. For the reasons that follow, the Motions to Dismiss will be denied.

## Discussion

In his Motions to Dismiss, the Debtor acknowledges that the facts alleged in the complaints must be assumed as true [DE #18 in Adv. No 16-1045, p. 2, n. 1]. Therefore the Court assumes that the Bank Account Transfer and the Condominium Transfer are avoidable under §726.105 and §726.106 of the Florida Statutes, unless the claims are barred by the four year statute of limitations in Fla. Stat. §726.110(1)-(2). If the statute of limitations applies, the avoidance claims must be dismissed. If not, the claims survive. To decide this issue, the Court must determine whether the Florida statute of limitations is inapplicable because the Trustee is purporting to step into the shoes of the IRS, which is not subject to state statutes of limitations.

We start with a review of the strong-arm provision in the Bankruptcy Code that the Trustee relies on and the applicable

6

sections of the Internal Revenue Code ("IRC") which render state statutes of limitation inapplicable to IRS avoidance actions brought within ten (10) years of a tax assessment. Section 544(b) of the Bankruptcy Code states that:

> the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is <u>voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502</u> of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. §544(b)(emphasis added). For purposes of the Motions to Dismiss, the Defendant concedes that the IRS is a creditor with an allowable unsecured claim within the meaning of §544(b).

Section 6502(a)(1) of the IRC provides as follows:

> [w]here the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun— (1) within 10 years after the assessment of the tax....

26 U.S.C. §6502(a)(1).

While §6502(a)(1) establishes the ten year deadline for the IRS to collect taxes, another IRC section, 26 U.S.C. §6901(a)(1)(A), provides the authority for the IRS to pursue avoidance actions against transferees of the taxpayers' property. Section 6901 of the IRC is titled "Transferred Assets"

and §6901(a)(1)(A)(i) provides the specific authority for avoiding transfers by a taxpayer who has income tax liability:

> (a) METHOD OF COLLECTION The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:
>
>> (1) INCOME, ESTATE, AND GIFT TAXES
>>
>>> (A) The liability, at law or in equity, of a transferee of property—
>>>
>>> (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes)

26 U.S.C. §6901(a)(1)(A)(i).

Although §6901(a)(1)(A) is silent as to what "law" or "equity" means, courts interpret the statute as merely establishing a procedure for the collection of taxes, not as a statute that sets the standard for establishing transferee liability. To establish transferee liability the IRS must rely on applicable state law. *Frank Sawyer Trust of May 1992 v. Comm'r*, 712 F.3d 597, 602–603 (1st Cir. 2013) ("[T]he federal statute authorizing the collection of taxes from transferees, 26 U.S.C. §6901(a)(1), provides only a procedural remedy against an alleged transferee; substantive state law controls whether a transferee is liable for a transferor's tax liabilities.")

Although the IRS must prove that a transfer is avoidable under the applicable state law, the limitations period for filing the avoidance action is governed by federal law. As described earlier, 26 U.S.C. §6502(a)(1) provides the IRS with authority to collect taxes for ten year after the assessment. In turn, §6901(a) allows collection from transferees of the taxpayer "subject to the same limitations" applicable to collection from the taxpayer. Therefore, under federal law, the IRS has ten years from the date of assessment to pursue an avoidance action. *Ebner v. Kaiser (In re Kaiser)* 525 B.R. 697, 710 (Bankr. N.D. Ill. 2014) ("*Kaiser*").[3] At the August 2, 2016 hearing, the Defendant stipulated that on the Petition Date, the IRS, notwithstanding the bankruptcy, could have timely sought to avoid the Bank Account Transfer and the Condominium Transfer.

A. The Trustee's Claims Are Not Time-Barred

The Trustee's argument is very simple. The IRS is a creditor holding an unsecured claim allowable under §502 and, on the filing date of this bankruptcy case, the IRS could have timely filed a complaint to avoid the Bank Account Transfer and the Condominium Transfer under applicable Florida fraudulent

---

[3] In addition to the specific IRC section granting the IRS a ten-year collection period, it is well settled that the United States is not bound by state statutes of limitation whether the United States brings suit in federal court or in state court. *U.S. v. Summerlin*, 310 U.S. 414 (1940) ("*Summerlin*"). The *Summerlin* rule applies to fraudulent transfer actions brought by an unsecured government creditor. *Bresson v. Comm'r*, 213 F.3d 1173, 1177-79 (9th Cir. 2000).

transfer law. Therefore, the Trustee, pursuant to §544(b), can now step into the shoes of the IRS to avoid these transfers.

There is a split of authority on whether a trustee can step into the shoes of the IRS under §544(b) and utilize the IRS ten-year collection window. Several courts have concluded that §544(b) is clear and trustees have the right to step into the shoes of the IRS and take advantage of the longer limitations period. *Kaiser* (cited earlier); *Finkel v. Polichuk (In re Polichuk)*, No. 10-003ELD, 2010 WL 4878789, at *3 (Bankr. E.D. Pa. Nov. 23, 2010); *Alberts v. HCA Inc. (In re Greater Southeast Cmty. Hosp. Corp. I)*, 365 B.R. 293, 299-306 (Bankr. D.D.C. 2006); *Shearer v. Tepsic (In re Emergency Monitoring Technologies, Inc.)*, 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006); *Osherow v. Porras (In re Porras)*, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004).

Only one court has reached the opposite conclusion. *Wagner v. Ultima Holmes, Inc. (In re Vaughan Co.)* 498 B.R. 297 (Bankr. D.N.M. 2013) ("*Vaughan*"). *Vaughan*, of course, is the decision relied upon by the Defendant. That court held that the IRS immunity from state statutes of limitation is a public right that cannot be invoked by a bankruptcy trustee under §544(b). The Trustee, in turn, relies on *Kaiser* and the other cases like it, which hold that a plain reading of §544(b) allows trustees

to step into the shoes of the IRS in order to utilize the ten-year collection period. *Vaughan* is the only published decision denying relief similar to the relief sought by the Trustee in this case. Nevertheless, none of these decisions are binding on this Court, so an independent review of the issues is appropriate.

The debtor in *Vaughan* paid over $500,000 to a construction company to build a home for the Debtor's principal, receiving no consideration in return. Over four years after the payments were made, the debtor filed for chapter 11 relief. The IRS filed a claim for $972,597.36 in a case which had approximately $67 million in unsecured non-priority claims. Because the challenged payments were outside of New Mexico's four-year fraudulent transfer statute of limitations, the chapter 11 trustee, like the Trustee in this case, relied on §544(b) and the claim filed by the IRS, to apply the ten-year collection period. *Vaughan* at 300-304.

The *Vaughan* court explained that the IRS is not bound by state law statutes of limitations because of the concept of *nullum tempus occurrit regi*, which translates to "no time runs against the king." *Id.* at 304. The idea, as explained in *Vaughan*, is that the federal government, in defending public rights or serving the public interest, should not be bound by

state law statutes of limitations. *Id*. The court then stated its
belief that, in enacting §544, Congress did not intend to vest
these sovereign powers in a bankruptcy trustee. *Id*. The *Vaughan*
court also expressed concern that because the IRS holds a claim
in most cases, allowing bankruptcy trustees to use §544(b) to
override state law statutes of limitations would result in an
unintended and "dramatic change in the law." *Id*. at 306.

The fundamental problem with *Vaughan's* analysis is its
failure to start where courts must start in interpreting
statutes and that is to look at the statute's plain meaning.
*Kaiser*, on the other hand, appropriately starts its analysis
with the text of §544(b).

The facts in *Kaiser* are substantially similar to the facts
in this case. The debtor, in the early 2000's, began having
trouble with his health club businesses and contemporaneously
started transferring assets to relatives and into trusts. The
debtor then filed a chapter 7 petition on October 12, 2011, with
liabilities totaling $18,570,778.80. The IRS filed a $5,000
claim in the case for unpaid taxes in 2010. Like the Trustee in
this case, the *Kaiser* trustee also relied on §544(b) and 26
U.S.C. §6502 to pursue the avoidance of transfers that were
otherwise time-barred by Illinois' four-year fraudulent transfer
statute of limitations. *Kaiser*, at 702-704.

12

In interpreting §544(b), the *Kaiser* court first looked at the plain meaning of the statute as required by the Supreme Court. *See United Sates v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989). The *Kaiser* court found that the clear language in the text of §544(b) imposed no limitation on the meaning of "applicable law" or on the type of unsecured creditor a trustee can choose as a triggering creditor. *Id.* at 711. Under the plain meaning analysis, if the language is clear, then policy concerns and legislative intent may not be considered, unless the result from applying the plain meaning would be absurd. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts —at least where the disposition required by the text is not absurd— is to enforce it according to its terms.'")(internal citations omitted). Neither *Kaiser*, nor this Court, finds the plain-meaning interpretation of §544(b) to be absurd.

The *Kaiser* court also directly addressed the arguments and concerns raised by Bankruptcy Judge Jacobvitz in *Vaughan*. As to the *nullum tempus occurrit regi* analysis, Bankruptcy Judge Barnes in *Kaiser* found that it is "misplaced here." *Id.* at 713. Section 544(b) is a derivative statute. Because the trustee is stepping into the shoes of a creditor that has sovereign

13

immunity, the focus is not on whether the trustee is performing a public or private function, but rather, the focus is on whether the IRS, the creditor from whom the trustee is deriving her rights, would have been performing that public function if the IRS had pursued the avoidance actions under "applicable law." *Id*. As explained in an earlier decision adopting the majority view, "the unsecured creditor's ability to trump the applicable state statute of limitations might derive from its sovereign immunity, but the estate representative's ability to override that same limitation derives from §544(b)." *In re Greater Southeast Cmty. Hosp. Corp. I*, 365 B.R. at 304.

In sum, this Court agrees with *Kaiser* and the majority of decisions that the language in §544(b) is clear and allows the Trustee in this case to step into the shoes of the IRS to take advantage of the ten-year collection period in 26 U.S.C. §6502.

B. Policy Implications

*Vaughan* expressed concern that allowing use of §544(b) to avoid state statutes of limitation will "eviscerate" the current practice and create a ten-year look-back period in most cases. *Kaiser* disagreed with this "slippery slope argument" and found it to be a "logical fallacy" because section 544(b) has read the same since its enactment in 1978 and the cases that address this issue are "few and far" between. *Kaiser* at 712. This Court does

14

not adopt the *Kaiser* court's conclusion that this ruling will have limited impact. The IRS is a creditor in a significant percentage of bankruptcy cases. The paucity of decisions on the issue may simply be because bankruptcy trustees have not generally realized that this longer reach-back weapon is in their arsenal. If so, widespread use of §544(b) to avoid state statutes of limitations may occur and this would be a major change in existing practice.

So, the *Vaughan* court's policy concerns may be justified and *Vaughan* may be right in believing that Congress intended that §544(b) be limited to avoidance actions that only non-governmental creditors could bring. But the statute does not say that and this Court cannot simply read such a limitation into the text. To do so would require the Court to ignore basic and important rules of statutory construction. Based upon the Court's interpretation of the law, it is-

**ORDERED** as follows:

1.    The Motions to Dismiss are denied.

2.    By **September 15, 2016**, Defendant, Analia Kipnis, shall file her answer and affirmative defenses to all Counts of the Complaint in Adv. No. 16-1045 and her answer and affirmative defenses to Count XXV of the Complaint in Adv. No. 16-1044.

###

15

COPIES TO:

Corali Lopez-Castro, Esq.
Vincent F. Alexander, Esq.
2525 Ponce de Leon 9 F
Coral Gables, FL 33134
(counsel for the Plaintiff)


Peter D. Russin, Esq.
200 S Biscayne Blvd. #3200
Miami, FL 33131
(counsel for the Defendant, Analia Kipnis)